**ARGUMENT SCHEDULED FOR FEBRUARY 24, 2023**

Nos. 22-5238(L), 22-5244, 22-5245, 22-5246

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

MAINE LOBSTERMEN'S ASSOCIATION,

*Plaintiff – Appellant*,

STATE OF MAINE DEPARTMENT OF MARINE RESOURCES, *et al.*,

*Intervenors – Appellants*,

v.

NATIONAL MARINE FISHERIES SERVICE, *et al.*,

*Defendants – Appellees*,

CONSERVATION LAW FOUNDATION, *et al.*,

*Intervenors – Appellees*.

---

Appeal from the United States District Court
for the District of Columbia, No. 1:21-cv-2509-JEB
Honorable James E. Boasberg, U.S. District Court Judge

---

**MOTION TO DISMISS APPEAL AS MOOT**

---

|  |  |
|---|---|
|  | TODD KIM |
|  | *Assistant Attorney General* |
|  | RACHEL HERON |
|  | J. BRETT GROSKO |
| Of Counsel: | TAYLOR A. MAYHALL |
|  | SOMMER H. ENGELS |
| JOHN ALMEIDA | *Attorneys* |
| MARK CAPONE | Environment and Natural Resources Division |
| SAM DUGGAN | U.S. Department of Justice |
| *Attorney-Advisors* | Post Office Box 7415 |
|  | Washington, D.C. 20044 |
| NOAA Office of General Counsel | (202) 353-7712 |
| Gloucester, Massachusetts | sommer.engels@usdoj.gov |

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A.    **Parties and Amici**

Except for the Maine State Chamber of Commerce and the State of New Hampshire, which filed amicus briefs in this Court in support of Appellants, all parties, intervenors, and amici appearing before the district court and in this Court are listed in Appellants' Opening Briefs.

B.    **Rulings Under Review**

References to the ruling at issue appear in the Opening Briefs for the Appellants.

C.    **Related Cases**

*Center for Biological Diversity v. Raimondo*, No. CV 18-112 (JEB), 2022 WL 2643535 (D.D.C. July 8, 2022) and 2002 WL 17039193 (D.D.C. Nov. 17, 2022) is a related case within the meaning of Circuit Rule 28(a)(1)(C).

/s/ *Sommer H. Engels*
SOMMER H. ENGELS

Counsel for Federal Appellees

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ......................................................................................... 1

    A.    Factual Background................................................................ 3

    B.    Subsequent Litigation............................................................ 4

    C.    Legislative Developments .................................................... 5

    D.    Status of the Conservation Framework and Opinion ........... 6

ARGUMENT ................................................................................................ 8

I.    Plaintiffs' claims concerning the Conservation Framework and
the Opinion are moot. .......................................................................... 8

    A.    Because the Service will no longer pursue the remaining
actions in the Conservation Framework for the lobster
and Jonah crab fisheries, no live controversy exists. ........... 9

    B.    Plaintiffs identify no other harms flowing from the
Opinion specific to the lobster and Jonah crab fisheries.... 12

II.    Neither exception to mootness applies. ............................................ 13

III.    Vacatur is the appropriate remedy. ................................................... 15

CONCLUSION ........................................................................................... 15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Alaska v. USDA*,
    17 F.4th 1224 (D.C. Cir. 2021).......................................................................13

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)...........................................................................................9

*Al-Tamimi v. Adelson*,
    916 F.3d 1 (D.C. Cir. 2019)...........................................................................5

*Am. Bar Ass'n v. Fed. Trade Comm'n*,
    636 F.3d 641 (D.C. Cir. 2011).......................................................................14

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997)...........................................................................................8

*Arkansas v. Gresham*,
    142 S. Ct. 1665 (2022)...................................................................................15

*Bureau of Alcohol, Tobacco, and Firearms v. Galioto*,
    477 U.S. 556 (1986).......................................................................................15

*Center for Biological Diversity v. Raimondo*,
    2022 WL 17039193 ........................................................................................4

*Center for Biological Diversity v. Raimondo*,
    No. CV 18-112 (JEB), 2022 WL 2643535 (D.D.C. July 8,
    2022) ...............................................................................................................4

*City New & Novelty, Inc. v. City of Waukesha*,
    531 U.S. 278 (2001).......................................................................................13

*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982).......................................................................................13

*Dist. 4 Lodge v. Raimondo*,
    40 F.4th 36 (1st Cir. 2022) ...........................................................................4

*People for the Ethical Treatment of Animals v. USDA*,
    918 F.3d 151 (D.C. Cir. 2019).................................................................13, 14

*Pharmachemie B.V. v. Barr Labs., Inc.*,
    276 F.3d 627 (D.C. Cir. 2002)....................................................................13

*Pub. Serv. Elec. & Gas Co. v. FERC*,
    783 F.3d 1270 (D.C. Cir. 2015)..................................................................10

*Sec'y of Lab., Mine Safety & Health Admin. v. M-Class Mining, LLC*,
    1 F.4th 16 (D.C. Cir. 2021)...................................................................14, 15

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).......................................................................................11

*United States v. Microsoft Corp.*,
    138 S. Ct. 1186 (2018)................................................................................15

**Statutes**

Pub. L. No. 117-328, Div. JJ, 136 Stat. 4459 (2022) ........... 1, 5, 6, 8, 10, 11, 12, 14

**Other Authorities**

86 Fed. Reg. 51,970 (Sept. 17, 2021) ........................................................................3

## INTRODUCTION

This appeal concerns a challenge to a biological opinion ("the Opinion") issued by the National Marine Fisheries Service under the Endangered Species Act analyzing the effects on the endangered North Atlantic right whale of a set of federally authorized fisheries, including the American lobster fishery. During consultation, the Service identified the need to implement measures to further reduce right whale entanglements and prepared a North Atlantic Right Whale Conservation Framework for Federal Fisheries in the Greater Atlantic Region ("Conservation Framework") describing the Service's plan to further reduce the effects of those fisheries via a series of planned regulations to be promulgated between 2021 and 2030. Plaintiffs—representatives and proponents of the lobster industry—argue that the scientific analysis in the Opinion was arbitrary and capricious and assert that creation of the Conservation Framework violated the Endangered Species Act. As the federal government's response brief on appeal explains, the district court correctly rejected those challenges.

Several days after response briefs were filed in this case, however, Congress passed the Consolidated Appropriations Act, 2023. Pub. L. No. 117-328, Div. JJ, 136 Stat. 4459, 6089-92 (2022) ("the Act"). The Act included a provision deeming the Service's 2021 Atlantic Large Whale Take Reduction Plan amendment rule—a regulation the Conservation Framework incorporated as its first phase—"sufficient

to ensure that the continued Federal and State authorizations of the American Lobster and Jonah Crab fisheries are in full compliance with" both the Marine Mammal Protection Act and the Endangered Species Act until December 31, 2028. Congress further directed the Service to promote the development of innovative gear technologies to reduce the fisheries' impacts on right whales, and then to promulgate a new regulation by December 31, 2028, incorporating the use of those technologies.

Thus, Congress has obviated the requirement to take the further actions spelled out in the Conservation Framework as they pertain to the lobster and Jonah crab fisheries to satisfy the Endangered Species Act and Marine Mammal Protection Act and directed instead that the Service channel its efforts into the development of new gear technologies and a new rulemaking in December 2028.

Given this legislative development, the Service will not pursue the set of remaining rulemakings and associated benchmarks set forth in the Conservation Framework, as they pertain to the lobster and Jonah crab fisheries. It will instead focus on developing the mandated technologies and pursuing the rulemaking Congress identified in the Act. The rule that Congress has directed to take effect by December 31, 2028, moreover, will be supported by a new consultation under the Endangered Species Act that uses the best scientific and commercial data available. Accordingly, there is no relief for this Court to grant. Thus, this appeal should be

dismissed as moot, and the district court's judgment on review should be vacated and the case remanded to the district court with directions to dismiss as moot.

## BACKGROUND

### A.    Factual Background

In 2021, the Service took two actions relevant to its management of the lobster fishery to limit the fishery's effects on the critically endangered right whale. *See* Federal Response Brief at 10-16. First, the Service issued the 2021 Atlantic Large Whale Take Reduction Plan amendment rule ("the Rule"), a set of measures intended to reduce the lobster industry's impacts on right whales. 86 Fed. Reg. 51,970 (Sept. 17, 2021); A360-77. Second, the Service completed its consultation under the Endangered Species Act on the federal authorization of ten fisheries, including the American lobster fishery. The resulting Opinion estimated that the trap/pot gear used by the lobster fishery and Jonah crab fishery is responsible for about 4.7 right whale deaths or serious injuries each year. A820-22.

The Opinion concluded that those deaths would not ultimately jeopardize the continued existence of the right whale, however, because the Service would implement a set of regulations to "reduc[e] serious injury and mortality of right whales in the Federal fisheries" by 95 percent by 2030. A447; *see* A531, 1070-80. Those planned regulations comprise the "Conservation Framework" challenged here. The Opinion did not identify the specific mechanisms each regulation in the

Conservation Framework would apply; instead, it identified benchmarks for each regulation to meet over time, as well as the timeline for their implementation. A606-07, 923. The Opinion evaluated the effects of the fisheries as they would operate under the Conservation Framework. A604-09, 1071.

**B.     Subsequent Litigation**

The Service's issuance of the Rule and Opinion prompted litigation from conservation groups interested in protecting right whales as well as groups interested in protecting the lobster industry. *See* Federal Response Brief at 16-20.[1]

The conservation groups claimed that the Rule was insufficiently protective under the Marine Mammal Protection Act and argued that the Opinion violated the Endangered Species Act because, among other reasons, it authorized a non-negligible level of take. *Center for Biological Diversity v. Raimondo*, No. CV 18-112 (JEB), 2022 WL 2643535, at *7 (D.D.C. July 8, 2022). The district court granted their motion for summary judgment, remanded the Rule without vacatur, and ordered the Service to finalize a new rule by December 2024, thereby combining the second and third phases of the Conservation Framework. *Center for Biological*

---

[1] In addition to the lawsuits mentioned here, several industry plaintiffs also challenged the Rule in the District of Maine. The plaintiffs ultimately dismissed their lawsuit after the First Circuit reversed the district court's grant of plaintiffs' motion for injunctive relief, holding that they were unlikely to succeed on the merits. *See Dist. 4 Lodge v. Raimondo*, 40 F.4th 36, 39-42 (1st Cir. 2022).

*Diversity v. Raimondo*, 2022 WL 17039193, at *3. It remanded the Opinion but held the question of vacatur in abeyance pending issuance of the new rule. *Id.*

The industry groups, by contrast, claimed in this lawsuit that the Opinion and the Conservation Framework targeted the lobster fishery for overregulation. Specifically, they argued that the scientific analysis in the Opinion, which they assert prompted NMFS to adopt the Conservation Framework, attributed too many right whale deaths and injuries to the lobster fishery. They further argued that creation and adoption of the Conservation Framework contravened procedures set forth in the Endangered Species Act.[2] The district court's decision denying Plaintiffs' motions for summary judgment, A210-42, is the subject of this appeal. The case is fully briefed as of January 10, 2023, and argument is scheduled for February 24.

## C.    Legislative Developments

On December 29, 2022, President Biden signed the Act, which included a provision specific to the Service's regulation of the lobster and Jonah crab fisheries to protect right whales. Pub. L. No. 117-328, Div. JJ, 136 Stat. at 6089-92. The Act first deems the Rule "sufficient to ensure that the continued Federal and State

---

[2] Plaintiffs also challenged the Rule, asserting that it was invalid because it allegedly relied on the Opinion to satisfy its consultation obligations under the Endangered Species Act. A36, 167, 206. The district court rejected Plaintiffs' Rule-specific challenge, and, as explained in more detail below at p.11, Plaintiffs have forfeited any opportunity to pursue that challenge on appeal by failing to advance it in their briefs. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019); *see* Federal Response Brief at 18.

authorizations of the American lobster and Jonah crab fisheries are in full compliance" with the Marine Mammal Protection Act and the Endangered Species Act until December 31, 2028. *Id.* § 101(a), 136 Stat. at 6089-90.

The Act also directs the Service to take a series of actions between now and December 31, 2028 to facilitate the development of new fishing gear technologies intended to protect whales and then to incorporate those technologies into a regulation to take effect by that date. *Id.* § 101(a)(1)-(3), 136 Stat. at 6089-90. It further directs the Service to establish a grant program to facilitate the development of those technologies, *id.* § 201(a)(1), 136 Stat. at 6090; and to submit annual reports to Congress describing "the actions taken and plans to implement measures expected to not exceed Potential Biological Removal by December 31, 2028," the "amount of serious injury and mortality by fishery and country" and the "proportion of the American lobster and Jonah crab fisheries that have transitioned to innovative gear technologies that reduce harm to" the right whale, *id.* § 101(a)(3), 136 Stat. at 6090. Finally, the Act authorizes appropriations of up to $50,000,000 per year between 2023 and 2032; not less than $40,000,000 must be dedicated to the development of innovative gear and technology. *Id.* § 203(a), 136 Stat. at 6092.

### D.    Status of the Conservation Framework and Opinion

As the attached declaration from the Service's Greater Atlantic Regional Administrator explains, "[i]n light of the Act, the agency is not pursuing the suite of

6

rulemakings and benchmarks as they are described in the Conservation Framework with respect to the lobster and Jonah crab fisheries." Declaration ¶ 3 (Exhibit 1).

Specifically, the Service "will not implement Phase 3 of the Conservation Framework, which called for a 2025 rulemaking that reduced mortalities and serious injuries (M/SI) by 60% in all federal fixed gear fisheries, reducing M/SI from entanglement, on average annually, to 1.04." Declaration ¶ 6. And because the Service will not implement Phase 3, the Service will also not implement Phase 4 of the Conservation Framework. Under Phase 4, the Service "had committed to undertake an additional rulemaking in 2030, building on the previous Phases, which would further reduce M/SI in all federal fixed gear fisheries from the Phase 3 benchmark by up to an additional 87% and resulting in 0.136 M/SI annually." *Id.* Instead, "[a]fter the issuance of the 2028 rule, NMFS will evaluate whether or not any additional rulemakings are further required either in 2030 or otherwise." *Id.*

The Service retains its discretion to carry out the remaining actions described in the Conservation Framework. For example, the Service "may carry out" Phase 2, which "calls for a 60% reduction in M/SI in gillnet and other pot/trap fisheries," but the Service "is not going to extend that rulemaking to the lobster and Jonah crab fisheries." Declaration ¶ 7. It also retains discretion to undertake "some or all of the non-regulatory actions described in the Conservation Framework," including but not limited to, providing updates to the New England and Mid-Atlantic Fishery

7

Management Councils, Atlantic States Marine Fisheries Commission, and Take Reduction Team; evaluating any updated or new data on right whale population and threats; and assessing measures taken by Canada to address serious injury and mortality in Canadian waters. *Id.*

In lieu of proceeding with the identified rulemakings, the Service will instead "adhere to the Congressional plan for right whale conservation as described in the Act"—that is, a program of developing new technology, submitting annual reports, and ultimately producing a new rule to take effect by December 31, 2028. Declaration ¶ 3; *see* 136 Stat. at 6089-90. The rule that Congress has directed to take effect by December 31, 2028, moreover, "will be supported by a new [Endangered Species Act] consultation that utilizes the best science and information available at that time." Declaration ¶ 3.

## ARGUMENT

## I.    Plaintiffs' claims concerning the Conservation Framework and the Opinion are moot.

Article III, § 2 of the U.S. Constitution confines federal courts to the decision of "Cases" or "Controversies." U.S. Const. art. III, § 2. "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). A case is moot if "the issues

8

presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Given Congress' direction in the Act, the Service will no longer pursue the remaining rulemakings and benchmarks for the lobster and Jonah crab fisheries set out in the Conservation Framework that Petitioners assert will harm them. And because the regulation Congress has directed the Service to issue by December 31, 2028 will be supported by a new consultation under the Endangered Species Act, Declaration ¶ 3, Plaintiffs' pending challenge to the Conservation Framework and the existing Opinion is moot. Thus, this case should be dismissed.

A.  **Because the Service will no longer pursue the remaining actions in the Conservation Framework for the lobster and Jonah crab fisheries, no live controversy exists.**

Although Plaintiffs challenge the scientific analysis in the Opinion, their case reduces to a challenge to the Conservation Framework. They contend that the analysis in the Opinion set the lobster fishery up for overregulation under the Conservation Framework by attributing too many right whale deaths and serious injuries to the fishery. They also contend the Conservation Framework was procedurally invalid because the Service created it *during* the Endangered Species Act's consultation process in coordination with the action agency, and not at the *end* of that process as a reasonable and prudent alternative.

9

For the reasons explained in the Service's response brief on appeal, neither contention has merit. Federal Response Brief at 23-56. At this point, however, this Court need not—indeed, *may* not—consider them. Congress in the Act has identified actions it intends the Service to take with regard to the lobster and Jonah crab fisheries in the coming years. The Service will take those actions, and accordingly the Framework is no longer an "operative planning document for right whale conservation for those fisheries." Declaration ¶ 3.

Although the Service will issue another regulation to take effect by December 31, 2028, the timing and purpose of that regulation has been dictated by Congress, not by the Conservation Framework. *See id.* ¶¶ 2, 3, 6. The Service's forthcoming regulation will be designed to "implement additional whale protection measures" that incorporate "existing and innovative gear technologies, as appropriate," as Congress has directed. 136 Stat. at 6089-90; *see* Declaration ¶ 3.

Put simply, because there is no longer a live dispute regarding the challenged Conservation Framework, this Court no longer has jurisdiction to address the issues raised by Plaintiffs on appeal. Indeed, opining on the Framework's procedural or substantive validity would only yield an advisory opinion, which no Article III court has authority to issue. *Pub. Serv. Elec. & Gas Co. v. FERC*, 783 F.3d 1270, 1274 (D.C. Cir. 2015) (explaining that "the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions"

10

(citation omitted)); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (recognizing that "from the beginning," the Supreme Court has disapproved of issuing advisory opinions).

To be clear, the Service's decision not to pursue the remaining rulemakings in the Conservation Framework specific to lobster and Jonah crab does not affect the Rule, which Congress deemed sufficient to put the relevant fisheries in compliance with the Endangered Species Act and Marine Mammal Protection Act. 136 Stat. at 6089-90. The Conservation Framework incorporated the Rule as its first phase, but the Rule was also a standalone action mandated by the Marine Mammal Protection Act, and its development preceded creation of the Conservation Framework. *See* Federal Response Brief at 10-11 (describing genesis of Rule); Declaration ¶ 5.

Although Plaintiffs presented a claim challenging the Rule in the district court, they have preserved *no* Rule-specific arguments for appeal, much less meritorious ones, as noted in the federal government's response brief. Federal Response Brief at 18. Their opening briefs mention the Rule in passing, to be sure, but not one advances the Rule-specific challenge under the Administrative Procedure Act that was presented in the district court. Moreover, neither of the two arguments advanced by Plaintiffs on appeal—(1) that the fisheries Opinion failed to rely on the best available science; or (2) that creation of the Conservation Framework skirted procedures set forth in the Endangered Species Act—could provide Plaintiffs

11

any relief as to the *Rule*, which did not rely on the Opinion, and which was created via an independent regulatory process. In any event, the Appropriations Act deemed the Rule "sufficient to ensure . . . full compliance with" the governing statutes, and an order remanding the Rule would topple the process set forth in the Act, which anticipated that the Rule would remain in place until its replacement at the end of 2028. 136 Stat. at 6089-90.

**B.    Plaintiffs identify no other harms flowing from the Opinion specific to the lobster and Jonah crab fisheries.**

As already explained, Plaintiffs' briefing confirms that the harms they allege will flow, if at all, from the regulatory actions and benchmarks specific to the lobster and Jonah crab fisheries set forth in the Conservation Framework. The larger *Opinion* is relevant only because the Service determined during consultation that "[g]iven the declining Status" of the right whale, these fisheries "will need to continue to reduce their impact" to allow the agency to meet its Endangered Species Act and Marine Mammal Protection Act obligations. A447.

Without the Conservation Framework, however, Plaintiffs can no longer even attempt to trace cognizable harms to the scientific analysis contained in the Opinion, and their claims are no longer live. *See, e.g.*, A12-14, 25-26, 144-47, 150, 181-84 (complaints articulating Plaintiffs' allegations of harm). Plaintiffs challenge no other element of the Opinion, *see id.*, and they are not harmed by the Opinion's analysis now that implementation of the Conservation Framework is no longer contemplated

12

for the fisheries relevant to Plaintiffs. Plaintiffs point to no other regulatory actions related to the Opinion as problematic or harmful. Further, the Regional Administrator's declaration confirms that when the Service issues the regulation mandated by Congress by the end of 2028, that regulation "will be supported by a new [Endangered Species Act] consultation that utilizes the best science and information available at that time." Declaration ¶ 3. At this point, then, the Opinion causes Plaintiffs no redressable harms, and their claims on appeal are moot. *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 629 (D.C. Cir. 2002).

## II.     Neither exception to mootness applies.

This Court recognizes two exceptions to the mootness doctrine, and neither applies here. The first exception applies when a defendant voluntarily stops its challenged conduct to avoid an adverse judgment. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). This exception protects plaintiffs from an actor feigning corrective action just to avoid review, then reversing that action. *See City New & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001); *accord Alaska v. USDA*, 17 F.4th 1224, 1229-30 (D.C. Cir. 2021) ("The established law of this circuit is that 'the voluntary cessation exception to mootness has no play' when the agency did not act 'in order to avoid litigation.' " (citation omitted)). "That general principle," moreover, "must be read in light of the presumption of legitimacy accorded to the Government's official conduct." *People for the Ethical Treatment of*

13

*Animals v. USDA*, 918 F.3d 151, 157 (D.C. Cir. 2019) (internal quotation marks omitted); *see id.* (collecting cases).

Here, the Service's decision not to pursue the regulations and associated benchmarks in the Framework was not prompted by a desire to avoid litigation—after all, the Service prevailed in the district court and the case is now fully briefed on appeal—but instead by the post-judgment passage of legislation instructing the Service to expend its resources pursuing a different regulatory schedule and goals. *See* Declaration ¶¶ 2-3; 136 Stat. at 6089-90. Thus, the exception does not apply. *See Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011) (noting that a scenario where agency takes new action due to legislative change "is not within the compass of the voluntary cessation exception to mootness").

The second exception, applicable to cases "capable of repetition but evading review," *Sec'y of Lab., Mine Safety & Health Admin. v. M-Class Mining, LLC*, 1 F.4th 16, 24 (D.C. Cir. 2021), also does not apply. When the Service promulgates a new regulation incorporating new innovative technologies and a new consultation document applying the best scientific information and data available, Plaintiffs can decide whether to challenge them. But the new regulation and new consultation will be new actions based on the availability of new gear and with reference to updated scientific information. Further the Service will be acting according to the plan set out by Congress, not the Conservation Framework. Declaration ¶ 3. If Plaintiffs do

decide to challenge the regulation and biological opinion, moreover, there is no reason to expect that their duration will be so short as to evade review. Thus, the Court lacks jurisdiction. *See M-Class Mining, LLC*, 1 F.4th at 24.

## III. Vacatur is the appropriate remedy.

Where congressional action, rather than mere happenstance, has altered the posture of a case, the "established practice" is to vacate the judgment on review. *United States v. Microsoft Corp.*, 138 S. Ct. 1186, 1188 (2018); *accord Bureau of Alcohol, Tobacco, and Firearms v. Galioto*, 477 U.S. 556, 560 (1986) (explaining that when a statute moots a pending appeal, "it is the duty of the appellate court to set aside the decree below" (citation omitted)). The Service has changed its regulatory approach "in light of the Act," Declaration ¶ 3, so that practice applies here. *See, e.g.*, *Arkansas v. Gresham*, 142 S. Ct. 1665 (2022) (vacating judgment of circuit court and remanding with instructions for district court to vacate its judgment and dismiss the complaint). Thus, vacatur is the appropriate remedy.

### CONCLUSION

For those reasons, this appeal should be dismissed as moot, and the district court's judgment on review should be vacated and the case remanded to the district court with directions to dismiss as moot.

Respectfully submitted,

/s/ *Sommer H. Engels*
TODD KIM

15

Of Counsel:

JOHN ALMEIDA
MARK CAPONE
SAM DUGGAN
*Attorney-Advisors*
NOAA Office of General Counsel
Gloucester, Massachusetts

January 24, 2023
90-8-6-08503

*Assistant Attorney General*
RACHEL HERON
J. BRETT GROSKO
TAYLOR A. MAYHALL
SOMMER H. ENGELS
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice

16

**CERTIFICATE OF COMPLIANCE**

1.    This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 27(a)(2)(B), this document contains 3,601 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Sommer H. Engels*
SOMMER H. ENGELS

Counsel for Federal Appellees

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, I electronically filed the above motion with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Sommer H. Engels*
SOMMER H. ENGELS

Counsel for Federal Appellees

**EXHIBIT 1**

Declaration of Michael Pentony

Greater Atlantic Regional Administrator of the National Marine Fisheries Service

**ARGUMENT SCHEDULED FOR FEBRUARY 24, 2023**

Nos. 22-5238(L), 22-5244, 22-5245, 22-5246

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MAINE LOBSTERMEN'S ASSOCIATION,

*Plaintiff – Appellant*,

STATE OF MAINE DEPARTMENT OF MARINE RESOURCES, *et al.*,

*Intervenors – Appellants*,

v.

NATIONAL MARINE FISHERIES SERVICE, *et al.*,

*Defendants – Appellees*,

CONSERVATION LAW FOUNDATION, *et al.*,

*Intervenors – Appellees*.

Appeal from the United States District Court
for the District of Columbia, No. 1:21-cv-2509-JEB
Honorable James E. Boasberg, U.S. District Court Judge

**DECLARATION OF MICHAEL PENTONY**

## DECLARATION OF MICHAEL PENTONY

I, Michael Pentony, declare as follows:

1.  I am the Greater Atlantic Regional Administrator of the National Marine Fisheries
    Service, National Oceanic and Atmospheric Administration, Department of Commerce
    (NMFS), Gloucester, Massachusetts. In this capacity, I am responsible for the
    development and implementation of management programs for the living marine
    resources of the northeast United States. I supervise the personnel in the Greater Atlantic
    Regional Fisheries Office (GARFO) who are charged with the implementation of fishery
    management plans and amendments thereto under the Magnuson-Stevens Fishery
    Conservation and Management Act (Magnuson-Stevens Act), the personnel who are
    charged with Endangered Species Act (ESA) compliance, and the personnel
    administering the Atlantic Large Whale Take Reduction Plan pursuant to the Marine
    Mammal Protection Act (MMPA).

2.  Congress recently passed the Consolidated Appropriations Act, 2023. Pub. L. No. 117-
    328, Div. JJ, Tit. I, 136 Stat. 4459 (2022) ("the Act"). The Act states "for the period
    beginning on the date of enactment of this Act and ending on December 31, 2028, the
    Final Rule amending the regulations implementing the Atlantic Large Whale Take
    Reduction Plan (86 Fed. Reg. 51970) shall be deemed sufficient to ensure that the
    continued Federal and State authorizations of the American lobster and Jonah crab
    fisheries are in full compliance with the Marine Mammal Protection Act of 1972 (16
    U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.)."
    Further, the Act states "NMFS shall . . . promulgate new regulations for the American
    lobster and Jonah crab fisheries consistent with the Marine Mammal Protection Act of

1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) that take effect by December 31, 2028."

3.  In light of the Act, the agency is not pursuing the suite of rulemakings and benchmarks as they are described in the Conservation Framework with respect to the lobster and Jonah crab fisheries and the Framework is no longer the operative planning document for right whale conservation for those fisheries.  Instead, the agency will adhere to the Congressional plan for right whale conservation as described in the Act that, among other things, requires NMFS to issue lobster and Jonah crab fisheries regulations that take effect by December 31, 2028.  The December 31, 2028, regulations will be supported by a new ESA consultation that utilizes the best science and information available at that time.

4.  The Conservation Framework outlines NMFS' commitment to implement measures that are necessary for the recovery of right whales, while providing a phased approach and some flexibility to the fishing industry.  The measures described in the Conservation Framework include four rulemakings described as Phases 1 through 4 and several non-regulatory actions.

5.  The Phase 1, 3, and 4 rulemakings apply to the lobster and Jonah crab fisheries.  NMFS finalized the Phase 1 rulemaking, the amendment to the Atlantic Large Whale Take Reduction Plan, in 2021.  That rulemaking was included as the Conservation Framework's first phase, but the rulemaking process for that regulation was already underway when the Conservation Framework was developed.

6.  In light of the Act, NMFS will not implement Phase 3 of the Conservation Framework, which called for a 2025 rulemaking that reduced mortalities and serious injuries (M/SI)

by 60% in all federal fixed gear fisheries, reducing M/SI from entanglement, on average annually, to 1.04. Under Phase 4, NMFS had committed to undertake an additional rulemaking in 2030, building on the previous Phases, which would further reduce M/SI in all federal fixed gear fisheries from the Phase 3 benchmark by up to an additional 87% and resulting in 0.136 M/SI annually. As indicated, Congress has now required that NMFS issue a rule in 2028 that is consistent with the Endangered Species Act and the Marine Mammal Protection Act. After the issuance of the 2028 rule, NMFS will evaluate whether or not any additional rulemakings are further required either in 2030 or otherwise.

7. The Phase 2 rulemaking calls for a 60% reduction in M/SI in gillnet and other pot/trap fisheries. NMFS may carry out this rule, or a similar rule, but NMFS is not going to extend that rulemaking to the lobster and Jonah crab fisheries. Additionally, NMFS may carry out some or all of the non-regulatory actions described in the Conservation Framework. Examples of non-regulatory actions described in the Conservation Framework include: (1) Providing updates, as appropriate, on the implementation of the Framework to the New England and Mid-Atlantic Fishery Management Councils, Atlantic States Marine Fisheries Commission, and Take Reduction Team; (2) Evaluating any updated or new data on right whale population and threats to assess progress towards achieving the Conservation Framework's goals; and (3) Assessing measures taken by Canada to address M/SI in Canadian waters.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed in Gloucester, Massachusetts, on this 24th day of January 2023.


_____
Michael Pentony, Regional Administrator
Greater Atlantic Regional Fisheries Office
National Marine Fisheries Service